UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOE HAND PROMOTIONS, INC.,

                                        Plaintiff,              REPORT AND
                                                               RECOMMENDATION
            -against-
                                                               19-CV-3500 (MKB)
SONNY SHAIKH, et al.,

                                        Defendants.
-------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

        Joe Hand Promotions, Inc. ("plaintiff") commenced this action against Sonny Shaikh

("Shaikh"), individually and as officer, director, shareholder and/or principal of Café Istanbul

Inc., as well as against Café Istanbul Inc. ("Café Istanbul") (collectively, "defendants"), charging

both with violations of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605 et seq., and

of the Copyright Act, 17 U.S.C. § 101 et seq.   See generally Complaint (June 13, 2019)

("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.

        Plaintiff's Complaint alleges that on December 1, 2018, defendants illegally intercepted

plaintiff's scrambled satellite transmission of the "Wilder v. Fury [Boxing] Match" (the "Event")

and exhibited it for their own commercial advantage or private financial gain.   See id. ¶¶ 6, 23.

Although properly served, see Summons Returned Executed (July 3, 2019), DE #8; Summons

Returned Executed (July 3, 2019), DE #9, defendants never answered or otherwise appeared in

this action and, on October 15, 2019, their default was noted, see Clerk's Entry of Default (Oct.

15, 2019), DE #14.   On November 14, 2019, plaintiff filed a Motion for Default Judgment

against both defendants, see Motion for Default Judgment (November 14, 2019) ("Pl. Mot."), DE

#15, which the Honorable Margo K. Brodie referred to the undersigned magistrate judge on

1

November 20, 2019 for a Report and Recommendation, see Order Referring Motion (Nov. 20 2019).

For the reasons that follow, this Court recommends that plaintiff be awarded damages in the amount of $1,450.00 for its Communications Act claims, $1,500.00 for its Copyright Act claim, attorneys' fees totaling $837.00, litigation costs in the amount of $400.00, and post-judgment interest, against defendant Café Istanbul, but that plaintiff's request for relief against defendant Shaikh be denied, and that the claims against him be dismissed with prejudice.

## BACKGROUND

According to plaintiff's uncontested factual assertions, plaintiff is a Pennsylvania corporation that was granted the exclusive rights of distribution and public performance of the Event within commercial establishments.   See Compl. ¶¶ 5-6.   Plaintiff then entered into licensing agreements with various entities in the State of New York by which plaintiff allowed these entities to publicly exhibit the Event to their patrons within their commercial establishments.   See id. ¶ 20; see also List of Broadcast Locations (Nov. 14, 2019), DE #15-5 (Ex. B).   The transmission of the Event was scrambled and unavailable to the general public without payment of the appropriate fees; with payment, plaintiff authorized and allowed customers to decrypt, unscramble, and receive the closed circuit, "IPTV," cable or satellite broadcast.   See Compl. ¶¶ 19-22.[1]

Plaintiff alleges that Café Istanbul is a business entity, the exact nature of which is unknown, located at 25-47 Steinway Street, Astoria, New York 11103.   See id. ¶ 16.   Plaintiff

---

[1] The Complaint explains that the Event was available for "private, non-commercial, viewing" although an individual purchaser "would be provided with terms of service which specifically provide for non-commercial, personal use only."   Compl. ¶ 22 (emphasis omitted).

also pleads that Shaikh, who resides in New York, had the supervisory capacity and control over the activities occurring within the establishment on December 1, 2018.  See id. ¶¶ 7, 9. Plaintiff proffers three affidavits from its investigator, or "auditor," Jose Batista, attesting to an unauthorized screening of the Event at Café Istanbul on December 2, 2018.  See Affidavit of Jose Batista (Nov. 14, 2019) ("Batista Aff."), DE #15-5 (Ex. C) (reproduced at ECF pp. 6-7);[2] Supplemental Affidavit, DE #15-5 (Ex. C) (reproduced at ECF p. 8); Supplemental Affidavit of Jose Batista (Feb, 20, 2020) ("Batista Supp. Aff."), DE #20-2.   According to Batista's first affidavit, executed on December 3, 2018, he entered Café Istanbul on the morning of December 2, 2018 at approximately 12:42 a.m. See Batista Aff. at ECF p. 6.   While there, he observed patrons "sitting in small groups smoking hookah pipes[.]"  Id. at ECF p. 7.   Batista observed four television sets in the establishment, "2 on each left/right wall," and observed the fight on three of these screens.   See id. at ECF pp. 6-7.   No advertisements were visible in the establishment.   See id. at ECF p. 7.   Batista observed the twelfth round of the match between the fighters Wilder and Fury during the three minutes he was on the premises, and saw "Wilder punch[ ] Fury who fell to the mat."   Id. at ECF p. 6.   Batista does not state the number of people he saw in the establishment, and while Batista claims to have been unable to view the fire code occupancy notice, he checked the box that estimated the capacity of the establishment to be no more than 100 people.   See id. at ECF p. 6.   Batista did not pay a cover charge to enter Café Istanbul, and his affidavit does not state whether he purchased any food or drink while there.

---

[2] Jose Bautista states in his affidavits that he arrived at Café Istanbul at 12:42 a.m. on December 2, 2018. See Batista Aff. at ECF p. 6.   Meanwhile, the Complaint pleads that the unauthorized screening occurred on *December 1, 2018*, see e.g., Compl. ¶ 40, likely because the undercard matches to the fight started during that evening and continued until the early hours of December 2nd.

See id. at ECF pp. 6-7.   Batista fails to address whether he observed any employees in the establishment, including Shaikh.   See id.   He avers that because "[t]he amount of smoke made it difficult to stay inside," he "went outside" the establishment after three minutes.   Id. at ECF p. 7.   No staff approached Batista during his visit to the establishment.   See id.

Batista's supplemental affidavit of February 20, 2020 avers that he recorded a video and still photographs of the interior and exterior of the establishment, including depictions of a television and the décor.   See Batista Supp. Aff.   Submitted with plaintiff's motion papers is a photo from the night the Event was broadcast.   See Batista Photo (Nov. 14, 2019), DE #15-5 (Ex. D) at ECF p. 9.   The photo is blurry, but appears to show the inside of an establishment, with least four patrons sitting at a table and smoking hookah.   See id.   This Court has also been provided with two videos purportedly taken by Batista on December 2, 2018, see Batista Supp. Aff., which seem to verify much of the information set forth in Batista's affidavit, see Videos (Feb. 20, 2020), DE #19 (CD-ROM submitted with cover letter).   The first video, which lacks sound, is three seconds long and shows the outside of an establishment with a white sign with the name ("Istanbul Mediterranean Cuisine") in red font and a phone number (718-278-2233) in black font.   See id.   The second video is 58 seconds long and shows a television inside the establishment displaying a boxing match.   See id.   Present in the establishment are a handful of patrons sitting at a table.   See id.[3]

---

[3] This minute-long video appears to be taken through the window from outside Café Istanbul, rather than inside the establishment.   See Videos.   Although the investigator avers that he entered the commercial establishment, see Batista Aff. at ECF p. 6; see also Batista Supp. Aff. ¶ 4, his initial affidavit also states that he had to step outside because of the amount of smoke inside the establishment, see Batista Aff. at ECF p. 7.   Without evidence to the contrary, this Court does not find Batista's affidavit to be inconsistent with this video; rather, it is plausible that Batista left Café Istanbul due to the smoke and only then began to film from outside the establishment.   Regardless, the video shows the fight displayed on a television in Café Istanbul as well as patrons seated at a table near that television.

Plaintiff contends that defendants did not enter into a licensing agreement to publicly exhibit the Event to their patrons on December 1, 2018, but rather, intercepted the transmission and screened the Event for the purposes of direct or indirect commercial advantage or private financial gain.  See Compl. ¶¶ 23-24.

## DISCUSSION

## I.    Default Judgment Standard

Following the Clerk's notation of a defendant's default, entry of a default judgment is appropriate provided the pleading properly states a claim upon which relief can be granted.   See, e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116 (FB)(MA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009).   If the allegations properly state a claim, the plaintiff must then establish damages.   See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).   "A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages." Axiom Plumbing, 2009 WL 234348, at *1 (citing Greyhound, 973 F.2d at 158).

## II.    Liability

### A.    Plaintiff's Claims Under the Communications Act

As a preliminary matter, although plaintiff's Complaint alleges that defendants violated both 47 U.S.C. §§ 605 and 553 of the Communications Act, and plaintiff seeks damages under both, see Compl. *ad damnum* ¶¶ (b), (d), "when a defendant's conduct has violated both [s]ections 553 and 603, an aggrieved cable operator is entitled to only one, non-duplicative recovery."   J & J Sports Prods., Inc. v. His & Hers Bar & Lounge, CV 17-4181 (ADS)(GRB), 2018 WL 4925706, at *3 (E.D.N.Y. Aug. 31, 2018) (quoting J & J Sports Prods., Inc. v. Alvarez,

No. 07 Civ. 8852(RPP)(HBP), 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009)), adopted, 2018 WL 4922912 (E.D.N.Y. Oct. 9, 2018); see also Joe Hand Promotions, Inc. v. Wall Street Rest., LLC, No. 14-CV-4267 (ENV)(RLM), 2015 WL 2084637, at *2 (E.D.N.Y. May 4, 2015) (citing cases).   Thus, "where the defendant's liability can be established under both sections, the Second Circuit has made clear that the court should award damages pursuant to section 605." His & Hers Bar, 2018 WL 4925706, at *3 (citing cases).

Accordingly, this Court must first address whether plaintiff's Complaint states a cause of action against defendants under 47 U.S.C. § 605(a).   Section 605 was enacted as part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934, 47 U.S.C. § 151 et seq.   Section 605(a) provides, in pertinent part, that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person.

47 U.S.C. § 605.

Section 605(a) "has been held to apply to the interception of cable communications originating as a satellite or radio transmission." J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc., 17 CV 2196 (ARR), 2018 WL 2078482, at *3 (E.D.N.Y. Feb. 27, 2018) (citing cases), adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018).   The Complaint in this case alleges that the Event "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal."   Compl. ¶ 19.   Courts in this Circuit have held that where, as here, "at least part of the Event's transmission was accomplished by satellite, the defendants' interception of the Event violates [section] 605(a)."   Alvarez, 2009 WL 3096074, at *4 (citations omitted); see also Garden City Boxing Club, Inc. v. Conway, No. 06

6

Civ. 3145(BSJ)(HBP), 2009 WL 125434, at *3 (S.D.N.Y. Jan. 20, 2009); cf. Cmty. Tel. Sys.,

Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002) (noting disagreement with this view in two

other Circuits).   Because plaintiff's Complaint alleges that defendants intercepted, received

and/or de-scrambled the Event willfully and without authorization, see Compl. ¶¶ 23-24; see also

Plaintiff's Motion for Default Judgment with Supporting Memorandum of Law (Nov 14, 2019)

("Pl. Mem.") at 2-3, DE #15-6, plaintiff adequately alleges a violation of section 605(a), and this

Court need not evaluate plaintiff's claim under section 553.

### B. Plaintiff's Claim Under the Copyright Act

The allegations set forth in plaintiff's Complaint also state a valid claim for copyright

infringement.   Section 106 of the Act gives owners of a copyright the "exclusive rights to do

and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to

prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the

copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or

lending[.]"   17 U.S.C. § 106; see also Premium Sports, Inc. v. Mendes, 17 CV 1309 (PKC)

(CLP), 2018 WL 2078488, at *4 (E.D.N.Y. Mar. 1, 2018) (citing the same), adopted, Order by

Pamela K. Chen Adopting Report and Recommendation (E.D.N.Y. Mar. 16, 2018).   "Under the

Act, '[a]nyone who violates any of the exclusive rights of the copyright owner as provided by

section[s] 106 through 122 . . . is an infringer of the copyright or right of the author, as the case

may be."   Mendes, 2018 WL 2078488, at *4 (citation omitted).   A plaintiff must prove two

elements in order to establish copyright infringement: first, the ownership of a valid copyright,

and second, the copying of constituent elements of the work that are original.   See Joe Hand

Promotions, Inc. v. Maupin, 2:15-cv-06355 (ADS)(AKT), 2018 WL 2417840, at *4 (E.D.N.Y.

May 25, 2018) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010)).

Here, the Complaint alleges that plaintiff is the "copyright holder of the . . . rights to the [Event], including the right of distribution as well as the licensing to commercial establishments for the right to publicly exhibit the same[,]" Compl. ¶ 38, and that without "obtain[ing] the proper authority or license from [p]laintiff to publicly exhibit" the Event, id. ¶ 39, defendants "publicly displayed the [Event]" on December 1, 2018, id. ¶ 40.   In the default judgment context, the Court accepts such allegations as true.   See Joe Hand Promotions, Inc. v. Levin, 18-CV-9389 (JPO), 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019).   With respect to the validity of the copyright, plaintiff has also presented a valid Certificate of Registration, issued by the U.S. Copyright Office, bearing registration number PA 2-172-539 and listing an effective date of registration as of February 7, 2019.   See Certificate of Registration (Nov. 14, 2019), DE #15-7.[4]   This Certificate of Registration constitutes prima facie evidence of the validity of the copyright and of the facts stated in the Certificate.   See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980) (citing 17 U.S.C. § 410(c)).[5]

---

[4] In response to an order of this Court, see Electronic Order (Feb. 18, 2020) ("2/18/20 Electronic Order"), plaintiff has also proffered a contract, dated February 25, 2019, between plaintiff and Showtime Networks Inc., the copyright claimant listed on the Certificate of Registration, see Agreement, DE #20-1.   That agreement is signed, in pertinent part, by representatives of Showtime Networks Inc. and Joe Hand Promotions, Inc., and verifies that plaintiff has the right to enforce and initiate legal proceedings in plaintiff's name for copyright infringement or violations of the Communications Act.   See id. at 1; see also Julie Cohen Lonstein Affirmation (Feb. 24, 2020) ("Lonstein Aff.") ¶ 5, DE #20 (noting that the contract between Joe Hand Promotions, Inc. and Showtime Networks, Inc. "gave the [p]laintiff the exclusive right to commercial enforcement of piracy rights to the copyright.").

[5] According to the Copyright Act of 1976, a certificate of registration must be made "before or within five years after publication of the [registered] work" in order to be entitled to the statutory presumption of validity.   See 17 U.S.C. § 410(c).   Here, the effective date of registration (February 7, 2019) postdates the date of Event by approximately two months (December 1, 2018).   Accordingly, the Certificate qualifies as prima facie evidence of the certificate holder's copyright ownership.

That said, this presumption of validity is not irrebuttable; rather, "[t]he presentation of a certificate of
[footnote continues]

Regarding the originality element of copyright infringement, "when there exists prima facie validity of [p]laintiff's copyright, the burden of proof shifts to the [d]efendant to show [p]laintiff's work is not original." Mendes, 2018 WL 2078488, at *5 (citation and internal quotation marks omitted). In light of their default, defendants have not rebutted the presumption of validity that attaches with plaintiff's filing of a valid Certificate of Registration, nor have they shown that plaintiff's work is not original. Therefore, based on the allegations set forth in the Complaint, this Court concludes that plaintiff has established liability with respect to its copyright infringement claim.

## C. Liability of the Corporate Defendant and Individual Defendant

### 1. Corporate Defendant

Plaintiff alleges that Café Istanbul "is a domestic corporation that was formed and is licensed to do business in the State of New York" and has "its principal place of business at 25-47 Steinway Street, Astoria, NY 11103." Compl. ¶¶ 16-17. Courts may take judicial notice of entries in the New York State Department of State ("NYSDOS") Corporation and Business Entities Database in determining a corporate defendant's status and location. See J & J Sports Prods., Inc. v. Gomez, 18-cv-5199 (KAM)(CLP), 2019 WL 4744229, at *5 (E.D.N.Y. Sept. 29, 2019) (citing cases). Here, the Court takes judicial notice of an entry in the NYSDOS Corporation and Business Entity Database that classifies "Café Istanbul Inc." as an active domestic business corporation located at 25-47 Steinway Street, Astoria, New York, 11103, with documents first filed with the NYSDOS on October 1, 2015. See Corporation and Business

---

registration by plaintiff merely 'shifts the burden of proof to [d]efendant[] to show the invalidity of [p]laintiff's copyrights.'" Mendes, 2018 WL 2078488, at *5 (citations and internal quotation marks omitted). Having defaulted, defendants have failed to rebut that presumption.

Database, New York Department of State, Division of Corporations,

http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search

"Cafe Istanbul") (current as of March 4, 2020).   The Court is therefore persuaded that Café

Istanbul is the proper corporate defendant.

Further, courts in the Eastern District of New York have held that a plaintiff's "well-

pleaded allegations state a valid claim against [an entity defendant] under § 605(a)" when, as is

the case here, the plaintiff pleads that (1) the plaintiff holds an exclusive license to broadcast the

Event at issue (see Compl. ¶ 6); (2) the entity defendant had no right to commercially broadcast

the transmission unless it contracted with the plaintiff through a licensing agreement (see id. ¶¶

20-22); and (3) the entity defendant screened the program despite failing to contract with the

plaintiff for authority to do so (see id. ¶ 23).   See, e.g., J & J Sports Prods., Inc. v. Inga, 18-CV-

2542 (PKC) (RLM), 2019 WL 1320278, at *4 (E.D.N.Y. Mar. 22, 2019) (citing cases).

Because plaintiff has sufficiently pled facts to state valid claims against Café Istanbul, this Court

respectfully recommends that the corporate defendant be held liable under section 605 of the

Cable Communications Policy Act and under section 106 of the Copyright Act.

## 2.  Individual Defendant

Without identifying the legal theory upon which it relies, plaintiff's Complaint also seeks

to hold individual defendant Shaikh liable for violations of 47 U.S.C. §§ 553 and 605, as well as

17 U.S.C. § 504.   See Compl. ¶¶ 7-14.   The Supreme Court has found that a "formulaic

recitation of the elements of a cause of action" is insufficient to establish liability, even on

default; rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief

that is plausible on its face," which requires that the plaintiff plead "factual content that allows

10

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted); see also J & J Sports Prods., Inc. v. Paucar, 17 Civ. 055358 (RJD) (VMS), 2018 WL 4501057, at *6 (E.D.N.Y. July 16, 2018) (noting the application of Iqbal in a default judgment analysis), adopted, 2018 WL 4495874 (E.D.N.Y. Sept. 19, 2018). Here, while the Complaint asserts that Shaikh, as an "officer, director, shareholder and/or principal of [Café Istanbul] . . . was the individual with supervisory capacity and control over the activities occurring within the Establishment on December 1, 2018[,]" Compl. ¶¶ 8-9, plaintiff has proffered no factual basis to support that conclusory assertion.[6]

More specifically, plaintiff's allegation that Shaikh had the ability to supervise the activities of Café Istanbul "fail[s] to identify any actions the [i]ndividual [d]efendant[] took, and do[es] not permit the Court to infer that [defendant Shaikh was] positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation." J & J Sports Prods., Inc. v. Classico Bar Inc., 16-CV-5639 (ADS)(SIL), 2018 WL 2022166, at *3 (E.D.N.Y. Feb. 13, 2018) (citation and internal quotation marks omitted), adopted, 2018 WL 1168582 (E.D.N.Y. Mar. 6, 2018). While the Complaint states that defendant Shaikh "was the individual with close control over the internal operating procedures and employment practices" of the establishment and "was present at the [e]stablishment during the exhibition of the [Event]," Compl. ¶¶ 11-12, neither the pleading nor plaintiff's motion papers support these

---

[6] The NYSDOS Corporations and Business Entities Database does not list Shaikh as a registered agent or otherwise reference him as somehow affiliated with the entity. See Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp-public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Cafe Istanbul") (current as of March 4, 2020).

conclusory allegations with additional facts to show that Shaikh should be held liable for Café Istanbul's allegedly illegal conduct.   See, e.g., Gomez, 2019 WL 4744229, at *6-7 (holding that a complaint with language similar to that in the case at hand did not plead sufficient facts to sustain a finding of individual liability); Inga, 2019 WL 1320278, at *5-6 (holding, in a case involving a complaint with factual allegations comparable to those in the instant case, that the allegations were insufficiently pled to establish liability on the part of the individual defendants); see also J & J Sports Prods., Inc. v. Emily Bar Rest. Inc., 15-CV-6499 (RJD), 2016 WL 6495366, at *2 & n.2 (E.D.N.Y. Sept. 27, 2016) (opining that the complaint was insufficiently pled where the individual defendant's purported right and ability to supervise the infringing activities were based solely on her status as an officer, director, and principal of the establishment), adopted, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016).   Simply put, the weight of authority in this Circuit requires "more than a formulaic recitation that the individual defendants exercised control over the subject premises."   Classico Bar, 2018 WL 1168582, at *3 (citing cases); see J & J Sports Prods., Inc. v. Europe, 18-CV-5094 (MKB) (CLP), 2019 WL 4733582, at *4 (E.D.N.Y. Sept. 27, 2019) (Brodie, J.) (declining to enter default judgment against individual defendant where the complaint "only provides conclusory, formulaic recitations of the elements of individual liability").

In any event, even if the Complaint were held to sufficiently allege that Shaikh had "supervisory capacity and control" over Café Istanbul on the night in question, the pleading and plaintiff's other submissions fail to satisfy the second prong of the vicarious liability test – i.e., that Shaikh had an "obvious and direct financial interest" in the infringement.   See J & J Sports Prods., Inc. v. La Parranda Mexican Bar & Restaurante Co., Inc., 18-CV-2622 (NGG) (RLM),

2018 WL 6716095, at *3-4 (E.D.N.Y. Dec. 21, 2018); J & J Sports Prods., Inc. v. Mar Y Las Estrellas Rest. Corp., 17-CV-1190 (MKB) (ST), 2018 WL 4583489, at *4-5 (E.D.N.Y. Sept. 25, 2018) (Brodie, J.) (holding that the plaintiff failed to provide sufficient allegations and evidence to warrant recovery against the individual defendant); accord Europe, 2019 WL 4433582, at *4 n. 4 (Brodie, J.) see also Classico Bar, 2018 WL 2022166, at *3-4 (finding plaintiff's complaint to be inadequate on similar grounds).   As an initial matter, the pleading herein does not contain allegations of a cover charge or premium surcharge on food or beverages, nor does it specify whether Café Istanbul sold food or drinks (alcoholic or non-alcoholic) during the hours in which the establishment broadcast the Event.   See J & J Sports Prods., Inc. v. LX Food Grocery Inc., 15-CV-6506 (NGG) (PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016) ("Plaintiff's auditor counted the number of patrons present during the Event . . . , but did not specify whether those patrons made any purchases.").   Nor does the record provide any basis to believe that Shaikh was present during the unauthorized exhibition.   Cf. Joe Hand Promotions, Inc. v. Bernal, 18-CV-85 (ILG) (SJB), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding that individual defendant, who "was present during the exhibitions," authorized the interceptions). Moreover, plaintiff has not established whether the individuals in the establishment at the time of the Event exceeded the number of patrons regularly present at Café Istanbul.   See Classico Bar, 2018 WL 2022166, at *3 ("Plaintiff does not distinguish the presence of the twenty-five or so viewers from the regular presence of patrons at [the establishment] on a similar night").   As the Court is thus "unable to draw any inferences as to whether people present for the broadcast of the [fight] would be required or expected to make any purchases[,] . . . [p]laintiff has not satisfied its burden of showing the 'obvious and direct financial interest' required to establish vicarious

liability" on Shaikh's part.   LX Food Grocery, 2016 WL 6905946, at *3.

Accordingly, as plaintiff has not satisfied its burden to establish Shaikh's contributory infringement or vicarious liability, this Court respectfully recommends that Shaikh not be held individually liable and that the claims against him be dismissed.[7]

## III.    Damages

The Court next addresses the appropriate measure of damages to award plaintiff. Although a defendant, by defaulting, admits to all well-pleaded allegations pertaining to liability, the plaintiff nevertheless must provide evidence to substantiate its request for damages; it is within the Courts' discretion to determine whether that burden has been met.   See, e.g., Greyhound, 973 F.2d at 158; Innovative Sports Mktg., Inc. v. Aquarius Fuente De Soda, No. 07-CV-2561 (ENV)(CLP), 2009 WL 3173968, at *6 (E.D.N.Y. Sept. 30, 2009).

### A.    Communications Act

#### 1.    Statutory Damages

Plaintiff seeks to recover $10,000.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), see Pl. Mem. at 12, 16-17, 25, 27, which provides for awards ranging from $1,000.00 to $10,000.00, "as the court considers just."   47 U.S.C. § 605(e)(3)(C)(i)(II).   "When determining statutory damages under section 605, courts generally choose between two methods of calculations – a per-customer damage calculation or a flat-sum award."   Kingvision Pay-Per-

---

[7] In Mar Y Las Estrellas Restaurant, Judge Brodie dismissed the Communications Act claims against the individual defendant but granted plaintiff leave to amend the complaint as to that defendant.   See 2018 WL 4583489, at *5; cf. Europe, 2019 WL 4733582, at *4 (although refusing to enter default judgment against individual defendant, Judge Brodie declined to exercise her discretion to sua sponte vacate entry of default).   Here, having been put on notice of the inadequacy of its pleadings based on the myriad of cases in this District (including Mar Y Las Estrellas and Europe) that address this issue, see supra, Part II.C.2, plaintiff should not be afforded an opportunity to cure the deficiencies of which it was or should have been aware.

14

View Ltd. v. Zalazar, 653 F.Supp.2d 335, 340 (S.D.N.Y. 2009).   The first approach involves a formula that multiplies a dollar amount per customer by the number of patrons alleged to be present during the unauthorized exhibition.   See id. at 340-41 (collecting cases awarding between $50.00 and $300.00 per patron).   On the other hand, "[t]he flat-sum approach is typically used when the exact number of patrons who observed the unauthorized programming is unknown."   Id. at 340.

Courts using the per-customer formula often multiply the number of patrons by the residential (non-commercial) fee charged to view the program, in order to compensate the plaintiff for its presumed lost revenues.   See generally id. at 341 (collecting cases).   Here, however, the record is silent as to both the approximate number of patrons in the establishment on December 1, 2018, as well as the residential purchase price to view the Event, rendering the per-patron method inappropriate.   See Bernal, 2019 WL 885930, at *4 (opining that the onus falls on the plaintiff to establish the actual fee for viewing the intercepted program if it wishes to pursue the per-patron damage calculation, and holding that, absent such a showing, the flat-fee method is the appropriate approach in awarding damages).   The Court therefore applies the "flat-sum" approach in this case, and concludes that plaintiff is entitled to $1,450.00 in statutory damages, reflecting the amount that, according to plaintiff, Café Istanbul (assuming a Fire Code Capacity of 1-100) would have been charged as a commercial licensing fee to broadcast the Event.   See Rate Card (Nov. 14, 2019), DE #15-5 (Ex. A).

In support of its demand for $10,000.00 in statutory damages, plaintiff cites to J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159 (KAM), 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010), noting that Judge Matsumoto "held in a similar case that two (2) times the amount of

basic statutory damages is appropriate in order to deter future violations under § 605." Pl. Mem at 14. That opinion, however, is almost ten years old, and does not account for recent trends in the case law involving similar facts.[8] For instance, this Court has identified two 2019 decisions authored by Judge Brodie in which she did not award statutory damages in excess of the amount of the commercial fee. See, e.g., J & J Sports Prods., Inc. v. Dowling, 18-CV-5086 (MKB) (RML). 2019 WL 4727448, at *4 (E.D.N.Y. Sept. 27, 2019) (Brodie, J.) (awarding $2,000.00 in statutory damages – the amount plaintiff would have received had defendant lawfully broadcast the program); Europe, 2019 WL 4733582, at *5 (Brodie, J.) (awarding the same).[9] Accordingly, the Court respectfully recommends that the District Court impose, pursuant to its discretionary authority, statutory damages totaling $1,450.00.

### 2. Enhanced Damages

Plaintiff also seeks to recover $20,000.00 in "enhanced damages" from Café Istanbul under section 605(e)(3)(C)(ii), see Pl. Mem. at 12-13, 16-17, 26-27, which permits the Court to increase an award by up to $100,000.00 "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage of private financial gain[,]" 47 U.S.C. § 605(e)(3)(C)(ii). A presumption of willfulness arises

---

[8] Welch is also distinguishable on other grounds. In that case, the investigator observed 85 individuals present at the establishment during the broadcast of the event. See Welch, 2019 WL 4683744, at *1, *4. By contrast, the investigator's affidavit here does not state how many persons the investigator saw during the three minutes he was at Café Istanbul, see Batista Aff. at ECF p. 17, and the 58-second video reflects a handful of patrons, see Videos.

[9] This trend is also reflected in decisions by other judges in this District. See Inga, 2019 WL 1320278, at *6 (declining to award the plaintiff $9,000, or three times the licensing fee); see also J & J Sports Prods., Inc. v. Reynolds, 18-CV-2540 (FB) (ST), 2019 WL 1299408, at *3 & n.3 (E.D.N.Y. Jan. 11, 2019) (awarding $3,000 and declining to treble the commercial sublicense fee), adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019).

when a program is broadcast without authorization, as was the case here.   See J & J Sports Prods., Inc. v. Morocho, 18 CV 2303 (AMD)(RLM), 2019 WL 1339198, at *6 (E.D.N.Y. Feb. 27, 2019) ("The fact that [the defendant] broadcast the [p]rogram without authorization establishes the willfulness of its conduct."), adopted, 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019).   To determine whether enhanced damages are warranted, "courts have considered various factors, including 'repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the [program]; defendant's charging a cover charge or charging premiums for food and drinks.'"   J & J Sports Prods., Inc. v. Martinez, No. 07-cv-3455-ENV-RER, 2009 WL 1913239, at *3 (E.D.N.Y. June 30, 2009) (citing Kingsvision Pay-Per View, Ltd. v. Recio, No. 02 Civ. 6583(JSM)RLE, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003)); see His & Hers Bar, 2018 WL 4925706, at *8.

Here, the only evidence proffered by plaintiff with respect to these factors is that plaintiff would have charged Café Istanbul a licensing fee for the right to exhibit the Event, and that Café Istanbul could not have received the broadcast signal without actively attempting to circumvent the access restrictions imposed.   See Compl. ¶¶ 20, 24.   In addition, based on the investigator's initial affidavit, it appears that Café Istanbul imposed neither a cover charge nor a food and drink minimum, nor did it advertise the Event.   See Batista Aff. at ECF pp. 6-7.

In similar circumstances, "judges in this district have taken varying approaches to the calculation of enhanced damages."   His & Hers Bar, 2018 WL 4925706, at *8 (citing J & J Sports Prods., Inc. v. Morleys Tavern, Inc., No. 13 CV 5211(RRM), 2014 WL 4065096, at *8 (E.D.N.Y. May 9, 2014) (citing cases), adopted, 2014 WL 4075162 (E.D.N.Y. Aug. 15, 2014)).

17

While some courts have awarded no enhanced statutory damages, see, e.g., Mar Y Las Estrellas Rest., 2018 WL 4583489, at *7, others have included an amount "equal to the amount of actual damages, or even double or triple that amount," His & Hers Bar, 2018 WL 4925706, at *8 (collecting cases).   In making its recommendation, this Court is guided by Judge Brodie's 2018 decision in Mar Y Las Estrellas Restaurant.   There, the District Court found that plaintiff was not entitled to enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii).   See Mar Y Las Estrellas Restaurant, 2018 WL 4583489, at *6-7.   Judge Brodie applied the aforementioned factors, concluding that enhanced statutory damages were not warranted because plaintiff made no allegations of repeated violations by the entity and plaintiff did not suffer significant actual damages.   See id. at *7.   The Court stated that plaintiff did not provide evidence of substantial unlawful monetary gains because the entity did not charge a cover or admission fee, advertise the event, or charge premium prices on food or drinks.   See id.

So too here, the record is devoid of any reason to believe that Café Istanbul repeatedly violated the Communications Act, any evidence of actual damages, and any evidence that defendant received substantial unlawful monetary gains or advertised the event.   Plaintiff's investigator's affidavit also states he was not charged a cover to enter the establishment, see Batista Aff. at ECF p. 7, and plaintiff proffers no evidence of a premium for food or drinks. Like the establishment in Mar Y Las Estrellas, Café Istanbul "appears to be a small business for which statutory damages will provide a sufficient penalty."   Mar Y Las Estrellas Restaurant, 2018 WL 4583489, at *7; see Videos.[10]   Accordingly, this Court respectfully recommends that

---

[10]  In the absence of a head count by the investigator, this Court draws the reasonable inference that were few patrons in the Establishment during the broadcast of the Event.   Here, this inference is supported by the videos submitted by plaintiff, which include a 58-second video that is blurry, was shot from outside the establishment looking inside, and appears to show reflections in one or more mirrors inside Café

18

the District Court decline to award enhanced statutory damages under the Communications Act.[11]

## B. Copyright Act

### 1. Statutory and Enhanced Damages

Turning to the proper measure of damages for the entity's violation of the Copyright Act, this Court respectfully recommends that plaintiff be awarded $1,500.00, consisting of $750.00 in statutory damages and $750.00 in enhanced damages.

Under the Copyright Act, a prevailing plaintiff may choose to recover (1) its actual damages or (2) statutory damages of between $750.00 and $30,000.00 per infringement, as the Court considers just. See 17 U.S.C. § 504(b), (c)(1). "[W]here the copyright owner sustains the burden of proving, and the court finds, that the infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). When determining whether an award is "just" pursuant to 17 U.S.C. § 504, courts consider factors including (a) "the expenses saved and profits reaped by the defendants in connection with the infringements," (b) "the revenues lost by plaintiff as a result of the defendants' conduct[,]" and (c) "the infringers' state of mind." Premium Sports,

---

Istanbul, making it impossible to count the precise number of patrons. See Videos.

[11] While Judge Brodie has awarded enhanced damages in several recent cases, see Dowling, 2019 WL 4727448, at *5; Europe, 2019 WL 4733582, at *5-6, the circumstances of those cases are materially different. As an initial matter, in contrast to the instant case, neither of those cases involved a copyright claim and a separate award of statutory and enhanced damages under the Copyright Act. See infra pp. 19-21. Moreover, those cases involved aggravating factors that are absent here. By way of example, in Dowling, patrons were charged a $10 cover charge, unlike the instant case in which there was no cover charge. Meanwhile, in Europe, Judge Brodie awarded enhanced damages based, in part, on the number of patrons present at the establishment (25), whereas the investigator in the instant action failed to state how many patrons he observed in the establishment during his visit, and the video and photographic evidence suggests there were fewer patrons present.

Inc. v. Nichols, 3:17-CV-0741 (GTS/DEP), 2018 WL 3574870, at *8 (N.D.N.Y. July 25, 2018) (citation omitted).

Here, plaintiff elects to recover statutory damages.  See Compl., *ad damnum* clause ¶ (f).  Specifically, plaintiff asks this Court to award "statutory penalties in an amount, in the discretion of this Court against [d]efendants, *jointly and severally*, of up [to] $30,000.00 pursuant to §504(c)(1)" and "enhanced damages in the amount of $150,000.00 pursuant to §504(c)(2) for their willful violation" of the statute.  See id. (emphasis in original).  While "[t]he award of statutory damages under the Communications Act does not preclude recovery under the Copyright Act[,]" it is "the Court's obligation to enter an award that it 'considers just[,]'" and "district courts have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act."  Mendes, 2018 WL 2078488, at *10 (citations omitted).[12]

In the instant case, this Court concludes that awarding the full measure of damages sought by plaintiff would not be just.  In fact, awarding $180,000.00 in damages would be "demonstrably excessive" in light of the $1,450.00 statutory damages award the Court recommended pursuant to the Communications Act, and given "the lack of allegations or evidence of 'substantial unlawful monetary gains by the defendants . . . or any significant actual damages to the plaintiff.'" Mendes, 2018 WL 2078488, at *10 (quoting HBO v. Champs of New

---

[12] "A plaintiff seeking compensation for the same injury under different legal theories is . . . only entitled to one recovery[,]" Levin, 2019 WL 3050852, at *5 (quoting Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH, 14-CV-585 (AJN), 2018 WL 4253181, at *16 (S.D.N.Y. Sept. 5, 2018)), although "that principle does not directly apply here, given that the Copyright Act and the Communications Act each 'vindicate [] separate rights, and courts have found it proper to award damages under both Acts[,]" id. at *6 (quoting Maupin, 2018 WL 2417840, at *8 (citing cases where courts have awarded damages under both Acts)).

20

Haven, Inc., 837 F.Supp. 480, 484 (D. Conn. 1993)).   There appears to be no consensus among

courts in this Circuit as to the amount to award for a willful violation of the Copyright Act when

the plaintiff is to receive a parallel award under the Communications Act.   See, e.g., Levin, 2019

WL 3050852, at *6 (reducing the plaintiff's requested statutory damages award of $35,000.00 by

80 percent); Mendes, 2018 WL 2078488, at *10 (reducing award of Copyright Act statutory

damages from the demanded $15,000.00 to $1,000.00); Maupin, 2018 WL 2417840, at *9

(awarding $1,500 in statutory damages under the Copyright Act and another $1,500 for the

defendants' willful behavior); Nichols, 2018 WL 3574870, at *8 (awarding $10,000.00 in

statutory and enhanced damages under 17 U.S.C. § 504).   In the absence of any case law in

plaintiff's memorandum of law addressing which approach the undersigned magistrate judge

should utilize, the Court, in its discretion, recommends an award of $750.00 in statutory damages

under section 504(c)(1), and an award of $750.00 under section 504(c)(2), based upon the

corporate defendant's willful behavior.

## C.  Fees and Costs

Section 605 also provides for the recovery of litigation costs and reasonable attorneys'

fees.   See 47 U.S.C. § 605(e)(3)(B)(iii) (the court "shall direct the recovery of full costs,

including awarding reasonable attorneys' fees[,] to an aggrieved party who prevails"); see also

Sykes, 997 F.2d at 1009.

Turning first to attorneys' fees, plaintiff seeks reimbursements totaling $837.00.   See

Lonstein Costs & Fees Affidavit (Nov. 14, 2019) ("Lonstein Costs & Fees Aff.") ¶ 13, DE #15-

2.   This is based on 2.4 hours of time, billed at $150.00 for a first-year associate who devoted

2.2 hours to the case, and $350.00 per hour for a partner who spent 0.2 hours on the case, along

with 4.6 hours of paralegal time, billed at $95.00 per hour.   See id.   In support of its

application, plaintiff has submitted detailed contemporaneous time records that show the discrete

tasks completed by these individuals.   See id.   Although a 2019 decision in this District

awarded the same plaintiff's counsel lower rates for partner and paralegal time charges, see

Bernal, 2019 WL 885930, at *6 (reducing the hourly rates for Ms. Lonstein's firm to $300 for

partner time, and $90.00 for paralegal time), this Court concludes that, given the relatively

modest increase in hourly rates *and* in number of hours billed, the requested $837.00 in

attorneys' fees is not unreasonable.

As to costs, plaintiff initially moved to recover a total of $1,607.50 in costs.   See

Lonstein Costs & Fees Aff. ¶ 13 (requesting $750.00 in auditing fees, $457.50 for service of

process fees, and $400.00 in filing fees).   However, in response to the Court's February 18,

2020 Electronic Order directing plaintiff to provide additional information regarding the amount

of time necessary for the investigation, how much the investigators charged per hour, and why

the investigators are qualified to demand the requested rate, see 2/18/20 Electronic Order

(citation omitted), plaintiff informed the Court that it was "withdraw[ing] its request to recover

[auditing fees] in the sum of $750.00[,]" see Lonstein Aff. ¶ 7.[13]   Likewise, with respect to

service of process fees, plaintiff withdrew "its request associated with process of service[,]"

Lonstein Aff. ¶ 8, in response to this Court's February 18th Electronic Order, which noted that

plaintiff failed to explain why the cost to serve to defendants totaled more than $400.00 and

---

[13] The Lonstein Affirmation erroneously states that plaintiff is withdrawing its request associated with
"process of service[.]" Lonstein Aff. ¶ 7.  Because (1) the heading of the section under which this
language appears is called "Signal Auditing Invoice," and (2) plaintiff also withdraws its request
associated with services of process fees in a later section of the Lonstein Affirmation, see id. ¶ 8, it is
reasonable to infer that plaintiff meant to withdraw its request associated with its investigative fees.

22

granted plaintiff leave to supplement its submission, see 2/18/20 Electronic Order (citation omitted).   Therefore, this Court recommends no award of costs for auditing fees or service of process fees.

All that remains is plaintiff's request to recoup its filing fee.   Because the docket establishes that plaintiff paid the $400.00 filing fee, the undersigned recommends that plaintiff be awarded this sum in costs.   See J & J Sports Prods., Inc. v. Ahuachapan Corp., 17-CV-01184 (LDH) (PK), 2019 WL 1274693, at *10 (E.D.N.Y. Mar. 20, 2019) (awarding an identical $400.00 filing fee based on a review of the docket sheet).

For the foregoing reasons, this Court recommends that plaintiff be awarded $837.00 in attorneys' fees and $400.00 in litigation costs.

### D.  Interest

Plaintiff also seeks "interest" as to its claims under the Communications Act and Copyright Act, see Compl. ad damnum ¶¶ (c), (g).   However, plaintiff does not specify whether it is seeking pre-judgment or post-judgment interest, and plaintiff's motion and supporting memorandum of law make no mention of plaintiff's request for interest.   Regardless, this Court recommends that plaintiff be awarded post-judgment interest but not pre-judgment interest.

Sections 605 and 504 do not provide for awards of pre-judgment interest, although courts have discretion to award such relief even absent explicit statutory authorization when doing so would be "fair, equitable and necessary to compensate the wronged party fully."   Aquarius Fuente De Soda, 2009 WL 3173968, at *10 (Communications Act) (citation omitted); see Capitol Records, Inc. v .MP3tunes, LLC, 07cv9931, 2015 WL 13684546, at *4 (S.D.N.Y. Apr. 3, 2015) (Copyright Act) (collecting cases).   That said, "[p]re-judgment interest is generally

23

awarded only in 'exceptional cases[,]'" <u>Aquarius Fuente De Soda</u>, 2009 WL 3173968, at *10 (citation omitted); <u>see</u> <u>Capitol Records</u>, 2015 WL 13684546, at *4, and plaintiff adduces no evidence that this case is "exceptional" so as to warrant an award of pre-judgment interest, particularly on top of an award of enhanced damages under the Copyright Act.

To the extent that plaintiff also requests post-judgment interest, plaintiff is entitled to such interest on damages from the date that a final judgment is entered until the date that defendant pays the judgment in full.   <u>See</u> 28 U.S.C. § 1961(a).   "Post-judgment interest accrues at the federal statutory rate until the judgment is paid."   <u>Morocho</u>, 2019 WL 1339198, at *7 (citing 28 U.S.C. § 1961(a) and cases).   This Court respectfully recommends that the District Court award plaintiff post-judgment interest.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court respectfully recommends that the District Court grant in part and deny in part plaintiff's Motion for Default Judgment.   Specifically, this Court recommends that default judgment be entered against defendant Café Istanbul, and that plaintiff be awarded $2,950.00 in damages as set forth herein, $837.00 in attorneys' fees, $400.00 in costs, plus any post-judgment interest, but that default judgment as to defendant Shaikh be denied and that the claims against him be dismissed with prejudice.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before **March 23, 2020**.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is requested to enter this Report and Recommendation into the ECF system and to transmit copies by Federal Express to defendants at the following addresses:

Sonny Shaikh
25-47 Steinway Street
Astoria, NY 11103

Café Istanbul Inc. d/b/a Café Istanbul
25-47 Steinway Street
Astoria, NY 11103

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**March 4, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**